IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARBARA JACKSON, W. RUSSELL            )
("RUSTY") DUKE, JR., NORTH CAROLINA    )
RIGHT TO LIFE COMMITTEE FUND FOR       )
INDEPENDENT POLITICAL EXPENDITURES,    )
and NORTH CAROLINA STATE POLITICAL     )
ACTION COMMITTEE                       )
                                       )
                 Plaintiffs,           )
                                       )
           v.                          )          1:05CV00691
                                       )
LARRY LEAKE, in his official capacity as the )
Chairperson of the North Carolina Board of   )
Elections, LORRAINE G. SHINN, in her         )
official capacity as a member of the North   )
Carolina Board of Elections, CHARLES         )
WINFREE, in his official capacity as a       )
member of the North Carolina Board of        )
Elections, GENEVIEVE C. SIMS, in her         )
official capacity as a member of the North   )
Carolina Board of Elections, ROBERT          )
CORDLE, in his official capacity as a member )
of the North Carolina Board of Elections,    )
ROY COOPER, in his official capacity as the  )
Attorney General for the State of North      )
Carolina, C. COLON WILLOUGHBY, JR., in       )
his official capacity as District Attorney for )
Wake County, JAMES DOUGLAS               )
HENDERSON,[1] in his official capacity as    )
District Attorney for Guilford County and as )
a representative of       the class of district)

---

[1] The Plaintiffs have named Robert Stuart Albright as a Defendant in this case in his official capacity as the District Attorney for Guilford County. However, in January of 2006, James Douglas Henderson became the District Attorney for Guilford County. Rule 25(d)(1) of the Federal Rules of Civil Procedure provides that when a public official ceases to hold office while named in his official capacity in an action, his successor shall automatically be substituted as a party to that action. Therefore, Mr. Henderson will be substituted as a Defendant in this case.

attorneys in the State of North Carolina,      )
M. KEITH KAPP, in his official capacity as    )
Chairperson of the North Carolina Bar          )
Administrative Committee, J. MICHAEL          )
BOOE, in his official capacity as               )
Vice-chairperson of the North Carolina Bar    )
Administrative Committee, DAVID BENBOW,)
in his official capacity as a member of the     )
North Carolina Bar Administrative               )
Committee, DAVID YATES BINGHAM, in his )
official capacity as a member of the North     )
Carolina Bar Administrative Committee,        )
GILBERT W. CHICHESTER, in his official       )
capacity as a member of the North Carolina  )
Bar Administrative Committee, RENNY W.      )
DEESE, in his official capacity as a member  )
of the North Carolina Bar Administrative      )
Commitee, JIM R. FUNDERBURK, in his          )
official capacity as a member of the North     )
Carolina Bar Administrative Committee,        )
JOHN E. GEHRING, in his official capacity as )
a member of the North Carolina Bar             )
Administrative Committee, ISAAC HEARD,       )
JR., in his official capacity as a member of    )
the North Carolina Bar Administrative          )
Committee, PATRICIA L. HOLLAND, in her      )
official capacity as a member of the North     )
Carolina Bar Administrative Committee,         )
MARGARET HUNT, in her official capacity as)
a member of the North Carolina Bar             )
Administrative Committee, MARGARET          )
MCCREARY, in her official capacity as a        )
member of the North Carolina Bar               )
Administrative Committee, DAVID T.             )
PHILLIPS, in his official capacity as a          )
member of the North Carolina Bar               )
Administrative Committee, FRED D.              )
POISSON, SR., in his official capacity as a     )
member of the North Carolina Bar               )
Administrative Committee, DONALD C.           )
PRENTISS, in his official capacity as a         )
member of the North Carolina Bar               )

2

Administrative Committee, RICHARD G.            )
ROOSE, in his official capacity as a member )
of the North Carolina Bar Administrative       )
Committee, JAN H. SAMET, in his official      )
capacity as a member of the North Carolina )
Bar Administrative Committee, and JUDY D. )
THOMPSON, in her official capacity as a      )
member of the North Carolina Bar               )
Administrative Committee,                            )
                                                                )
                                 Defendants.              )
_____ )

## MEMORANDUM OPINION

Tilley, Chief Judge

        This case concerns a challenge by Plaintiffs Barbara Jackson, W. Russell

Duke, North Carolina Right to Life Committee Fund for Independent Expenditures

("IEPAC"), and North Carolina State Political Action Committee ("SPAC") to the

constitutionality of several provisions of the North Carolina Public Campaign

Financing Fund.  It is now before the Court on the Defendants' Motion to Dismiss

pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil

Procedure [Doc. # 8].  For the reasons set forth below, the Defendants' Motion to

Dismiss will be GRANTED IN PART.  The District Attorney for Guilford County will

be dismissed as a party to this case and this case will be transferred to the Eastern

District of North Carolina.

I.

        The facts in the light most favorable to the nonmoving party are as follows:

In 2002, the North Carolina General Assembly created the North Carolina Public

3

Campaign Financing Fund (the "Fund").  N.C. Gen. Stat. §§ 163-278.61 et seq.

The Fund provides for a voluntary system of full public financing for campaigns for

judicial positions on the North Carolina Supreme Court and the North Carolina

Court of Appeals.  Id. § 163-278.61.  In creating the Fund, the General Assembly

sought to "ensure the fairness of democratic elections" and "protect the

constitutional rights of voters and candidates from the detrimental effects of

increasingly large amounts of money being raised and spent to influence the

outcome of [judicial] elections, . . . since impartiality is uniquely important to the

integrity and credibility of the courts."  Id.  Candidates for judicial office may

choose whether to participate in the Fund ("participating candidates") or to

conduct privately financed campaigns ("nonparticipating candidates").  The North

Carolina State Board of Elections (the "Board") is responsible for the administration

of the Fund.  See id. § 163-278.68(a) ("Enforcement by the Board. - The Board,

with the advice of the Advisory Council for the Public Campaign Fund, shall

administer the provisions of this Article.").

On August 8, 2005, Plaintiffs Barbara Jackson, W. Russell Duke, Jr., IEPAC,

and SPAC filed suit challenging the constitutionality of certain provisions of the

Fund and seeking both declaratory and injunctive relief.  Specifically, Plaintiffs

allege that the challenged provisions "violate the First and Fourteenth Amendments

to the United States Constitution by unduly impinging on protected speech and

association . . . ."  (Am. Compl. ¶ 1.)  Plaintiffs challenge the constitutionality of

4

N.C. Gen. Stat. §§ 163-278.66, 163-278.67, 163-278.13(e2)(3), and N.C. Gen. Stat. § 84-34.  Briefly, these sections provide for the following: (1) Section 163-278.66 requires nonparticipating candidates to report campaign contributions or expenditures that exceed certain specified trigger amounts to the Board within 24 hours and any independent entities making expenditures in support of a nonparticipating candidate to make similar reports to the Board (the "reporting provision"); (2) Section 163-278.67 provides for "rescue funds" for participating candidates in the event the expenditures of a nonparticipating candidate (or of an independent entity in support of a nonparticipating candidate) exceed certain specified trigger amounts (the "rescue funds provision"); (3) Section 163-278.13(e2)(3) prohibits contributions to the campaign of any candidate during the period beginning 21 days before the general election and ending the day after the general election (the "21 day provision"); and (4) Section 84-34 requires every active member of the North Carolina State Bar to pay a $50 fee for the support of the North Carolina Public Financing Fund.

Section 163-278.22 sets forth the duties of the Board in the administration and enforcement of the Fund's provisions.  Id. § 163-278.22.  In particular, the Board is charged with the following:

> It shall be the duty and power of the State Board . . .
> (1) To prescribe forms of statements and other information required to be filed by this Article, to furnish such forms to the county boards of elections and individuals, media or others required to file such statements and information, and to prepare, publish and distribute or cause to be distributed to all candidates at the time they file notices of

5

candidacy a manual setting forth the provisions of this Article and a
prescribed uniform system for accounts required to file statements by
this article. . . .

(7) To make investigations to the extent the Board deems necessary
with respect to statements filed under the provisions of this Article
and with respect to alleged failures to file any statement required
under the provisions of this Article, and, upon complaint under oath
by any registered voter, with respect to alleged violations of this
Article.

(8) After investigation, to report any apparent violations by
candidates, political action committees, referendum committees,
individuals, or persons to the proper district attorney as provided in
G.S. § 163-278.27. . . .

(14) To calculate, assess, and collect civil penalties pursuant to this
Article.

Id. § 163-278.22(1), (7), (8) & (14). Thus, the Board is responsible for informing

the county boards of elections, individual candidates, and others of the Fund's

rules and requirements. Id. It is also responsible for investigating alleged violations

of the Fund's provisions, imposing civil penalties, and reporting "apparent

violations" to the appropriate district attorney. Id.

If the Board determines that any individual, political committee, or other

entity has violated any of the Fund's provisions, the Board may impose a civil

penalty on the individual or entity in an amount up to ten thousand dollars per

violation or three times the amount of any financial transaction involved in the

violation. See id. §§ 163-278.70 & 163-278.34(b). The Board also has the

authority to take any of the following actions in addition to, or in lieu of, imposing

a civil penalty:

(1) Issue an order requiring the violator to cease and desist from the
violation found. (2) Issue an order to cease receiving contributions

6

and making expenditures until a delinquent report has been filed and
any civil penalty satisfied.  (3) Issue an order requiring the violator to
take any remedial action deemed appropriate by the Board.  (4) Issue
an order requiring the violator to file any report, statement, or other
information as required by this Article or the rules adopted by the
Board.  (5) Publicly reprimand the violator for the violation.

Id. § 163.278.34(c).  Before imposing any civil sanction, the Board is to "notify

and consult with the district attorney who would be responsible under § 163-

278.27 for bringing a criminal prosecution concerning the violation."  Id. § 163-

278.34(f).

Furthermore, if the Board determines that any individual, candidate, political

committee, or other entity has intentionally violated the 21 day provision, the

individual or entity is subject to prosecution for a Class 2 misdemeanor.  See id. §

163-278.27(a).  If the Board "has knowledge of or has reason to believe" there has

been a violation of the 21 day provision, it shall report that fact to the appropriate

prosecuting authority: (1) in the case of a candidate seeking election to the North

Carolina Supreme Court or the North Carolina Court of Appeals, the Board shall

report to the district attorney of the prosecutorial district in which Wake County is

located, id. § 163-278.27(b)(2); and (2) in the case of an individual other than a

candidate, such as a political action committee, the Board shall report to the

district attorney of the prosecutorial district in which the individual resides, id. §

163-278.27(b)(3).  "Upon receipt of such a report from the Board, the appropriate

district attorney shall prosecute the individual or persons alleged to have violated

[the 21 day provision]."  Id. § 163-278.27(c).

7

The Plaintiffs have named the following parties as Defendants in this case: (1) members of the North Carolina State Board of Elections, including Larry Leake, Chairperson of the North Carolina Board of Elections; (2) the Attorney General for the State of North Carolina; (3) the District Attorney for Wake County; (4) the District Attorney for Guilford County;[2] and (5) members of the North Carolina Bar Administrative Committee, including M. Keith Kapp, Chairperson of the North Carolina Bar Administrative Committee.

The Defendants filed a Motion to Dismiss on November 14, 2005 [Doc. # 8], asserting: (1) the Plaintiffs lack standing to bring many of their claims against the Defendants; (2) the Plaintiffs have failed to state claims upon which relief can be granted; (3) the Attorney General for the State of North Carolina, District Attorney for Wake County, and District Attorney for Guilford County should be dismissed as parties to this action; and (4) because the District Attorney for Guilford County is not a proper party to this action, venue is improper in the Middle District of North Carolina.[3]

For reasons discussed below, see part IV infra, the District Attorney for Guilford County is the only Defendant who resides in the Middle District of North

_____

[2] The Plaintiffs have named the District Attorney for Guilford County both in his official capacity and as a representative of the class of district attorneys in the State of North Carolina.

[3] The Plaintiffs filed their Response in Opposition on December 7, 2005 [Doc. # 29] and the Defendants filed their Reply on December 22, 2005 [Doc. # 40].

8

Carolina and therefore it is only because of his presence as a Defendant in this case that venue is proper here.  See 28 U.S.C. § 1391(b) ("A civil action wherein jurisdiction is not founded solely upon diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . . .").  However, the Defendants contend that the District Attorney for Guilford County is not a proper Defendant in this case because the Plaintiffs "have failed to allege any actual rather than speculative injury that is fairly traceable to any action of [the District Attorney for Guilford County]."[4]  (Def.'s Mem. Supp. Mot. Dismiss 19.)  Thus, the Defendants assert that the Plaintiffs do not have standing to file suit against the District Attorney for Guilford County.  Therefore, in order to determine whether venue is proper in the Middle District of North Carolina, the Court must first examine whether the Plaintiffs have standing to sue the District Attorney for Guilford County.

## II.

When a defendant alleges that a plaintiff lacks standing to assert its claims, the defendant is challenging the court's subject matter jurisdiction over the plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[4] The Defendants assert that the Plaintiffs have not alleged an injury "fairly traceable" to either the Attorney General, the District Attorney for Wake County, or the District Attorney for Guilford County and thus the Plaintiffs do not have standing to sue any of these three public officials.  However, because the Court is considering this issue for the limited purpose of determining whether venue is proper in the Middle District of North Carolina, it will only determine at this time whether Plaintiffs have standing to sue the District Attorney for Guilford County.

9

The plaintiff then bears the burden of proving subject matter jurisdiction.

Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Because standing is "an indispensable part of the plaintiff's case, each [of its] element[s] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). Thus, "[a]t the pleading stage, [a plaintiff's] general factual allegations of injury resulting from the defendant's conduct" may be sufficient to establish standing, "for on a motion to dismiss [a court will] presume that general allegations embrace those specific facts that are necessary to support the claim." Id. However, in determining whether jurisdiction exists, a court is to regard the allegations in the pleadings as "mere evidence on the issue" and it "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768. Finally, a motion to dismiss made pursuant to Rule 12(b)(1) should only be granted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

III.

The Constitution limits the jurisdiction of the federal courts to "cases and controversies." U.S. Const. art. III, § 2. "Among the several doctrines that have

10

grown up to elaborate that requirement, the one that requires a litigant to have standing to invoke the power of a federal court is perhaps the most important." Friends for Ferrell Parkway, L.L.C. v. Stasko, 282 F.3d 315, 319 (4th Cir. 2002) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)).  A litigant who does not "stand to profit in some personal interest" by prevailing on his or her claim has not presented a case or controversy for the purposes of Article III.  Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 39 (1976).  Thus, the standing requirement is designed to ensure that the parties have a sufficient personal stake in the outcome of a dispute so that judicial resolution of the dispute would be both meaningful and appropriate.  Friends for Ferrell Parkway, L.L.C., 282 F.3d at 319-20 (citing Allen, 468 U.S. at 750-52); see also Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) ("Doctrines like standing . . . are simply subsets of Article III's command that the courts resolve disputes, rather than emit random advice.").

In order to demonstrate standing under Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Allen, 468 U.S. at 751.  Thus, a plaintiff must first allege that he or she has suffered an "injury in fact" which is (a) "concrete and particularized," Lujan, 504 U.S. at 560-61 (citation omitted), and (b) "actual or imminent, not conjectural or hypothetical," id. (citation omitted). Second, there must be a causal connection between the injury and the conduct complained of, that is, "the injury has to be fairly traceable to the challenged action

11

of the defendant and not the result of the independent action of some third party not before the court." Id. (citation omitted). Finally, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (citation omitted).

The District Attorney for Guilford County has been named as a party in this case because (1) the Board is required to "notify and consult" with him before assessing a civil penalty against any individual or entity who resides in his prosecutorial district and (2) he is responsible for bringing criminal prosecutions for violations of the 21 day provision against an individual or entity who resides in his prosecutorial district after receiving a report of a violation from the Board. See N.C. Gen. Stat. §§ 163-278.34(f) & 163-278.27(b)(3). Of the four plaintiffs, only SPAC and IEPAC reside in Guilford County, North Carolina. (See Am. Compl. ¶¶ 9, 10.) Thus, the Board would only report a violation of the Fund's provisions to the District Attorney for Guilford County in the event that Plaintiff SPAC or Plaintiff IEPAC were to commit such a violation.[5] See N.C. Gen. Stat. §§ 163-278.34(f) &

---

[5] Not only do Plaintiffs Jackson and Duke reside in the Eastern District of North Carolina, (see Am. Compl. ¶¶ 7 & 8), they are also candidates for judicial office, (see id.). Because they are candidates for judicial office, the Board is specifically directed to (1) consult with the District Attorney for Wake County before imposing any civil penalty on these individuals, N.C. Gen. Stat. § 163-278.34(f), and (2) refer any violation of the 21 day provision by these individuals to the District Attorney for Wake County for criminal prosecution, id. § 163-278.27(b)(2). Thus, these individuals are not subject to the jurisdiction of the District Attorney for Guilford County and the Court need not determine whether they have standing to sue the District Attorney for Guilford County for purposes of the venue analysis.

163-278.27(b)(3).  Therefore, it must first be determined whether Plaintiffs SPAC and IEPAC have standing to sue the District Attorney for Guilford County.

A.

Plaintiff IEPAC has made the following allegations regarding the injury it is caused by the Fund's reporting and rescue funds provisions[6]: (1) "To avoid releasing publicly-financed candidates from their expenditures limitations, Plaintiff NCRTL-IEPAC will not make independent expenditures" (Am. Compl. ¶ 37); (2) "[D]ue to the application of the 'trigger provision,' Plaintiff NCRTL-IEPAC will in fact not so exercise its First Amendment rights in future elections" (Am. Compl. ¶ 28); (3) "Because of these provisions, Plaintiff NCTRL-IEPAC will not make independent expenditures in excess of $3,000 supporting a nonparticipating candidate because such expenditures are applied to the amount that triggers the rescue fund and may result in making available more money to an opposing participating candidate" (Am. Compl. ¶ 49); and (4) "Because of G.S. § 163-278.66(a), Plaintiff NCTRL-IEPAC will not make independent expenditures supporting a nonparticipating candidate because such expenditures are applied to the amount that triggers the rescue fund and may result in making available more money to an opposing participating candidate" (Am. Compl. ¶ 94.)

_____

[6] Plaintiff IEPAC is challenging the constitutionality of the Fund's reporting and rescue funds provisions.  (See Am. Compl. ¶¶ 37, 38, 42, 45 & 94.)  It does not challenge either the 21 day provision or the $50 fee for members of the North Carolina State Bar.

13

In order to invoke federal jurisdiction, Plaintiff IEPAC must show that its injury is "fairly traceable to the challenged action of the defendant . . . ."  Lujan, 504 U.S. at 560.  Article III's causation requirement requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." Nova Health Systems v. Gandy, 416 F.3d 1149, 1156 (10th Cir. 2005) (citations omitted).  If Plaintiff IEPAC were to violate the Fund's reporting and rescue funds provisions, the Board has the authority to impose any one of six different civil sanctions.  See id. §§ 163-278.34(b) & (c).  By statute, the Board is required to "notify and consult with" the District Attorney for Guilford County in the event it chooses to impose a civil sanction upon Plaintiff IEPAC.[7]  Id. § 163-278.34(f). However, the statutory requirement that the Board "notify and consult with" the District Attorney is not sufficient to support a finding that any injury suffered by Plaintiff IEPAC would be fairly traceable to the conduct of the District Attorney for Guilford County.  See S. Pac. Transp. Co. v. Brown, 651 F.2d 613, 615 (9th Cir. 1980) (finding that plaintiffs did not have standing to sue the attorney general because statute vesting authority with attorney general to "direct and advise"

---

[7] N.C. Gen. Stat. § 163-278.34(f) provides:

Notifying and Consulting with District Attorney. - Before assessing a civil penalty under subsection (b) of this section or imposing a civil remedy under subsection (c) of this section, the State Board of Elections shall notify and consult with the district attorney who would be responsible under G.S. 163-278.27 for bringing a criminal prosecution concerning the violation.

14

district attorneys did not "make the alleged injury fairly traceable to his action").

Thus, even assuming Plaintiff IEPAC's allegations are sufficient for purposes of

Article III's injury in fact requirement, none of its alleged injuries are "fairly

traceable" to the District Attorney for Guilford County.

Moreover, Article III requires that the plaintiff demonstrate a substantial

likelihood that the relief requested will redress its injury in fact.  <u>Duke Power Co. v.

Carolina Envtl. Study Group, Inc.</u>, 438 U.S. 59, 75 n.20 (1978).  In this case, in

addition to a declaration of the unconstitutionality of the Fund's reporting and

rescue funds provisions, Plaintiff IEPAC seeks a permanent injunction prohibiting

the enforcement of these provisions.  (Am. Compl. ¶ 3.)  However, the entry of an

injunction against the District Attorney for Guilford County would not prevent the

*Board* from imposing any of the civil sanctions provided for in § 163-278.34.  And

should the Board ultimately be enjoined from enforcing one or more of the statute's

provisions, the District Attorney would never come into play as to those provisions.

Thus, an injunction against the District Attorney for Guilford County would do

nothing to redress Plaintiff IEPAC's alleged injuries.  <u>See</u> <u>Linda R.S. v. Richard D.</u>,

410 U.S. 614, 618-19 (1973) (finding that plaintiff lacked standing where it was

only "speculative" that the requested relief, an injunction requiring the district

attorney to enforce a child support statute against the father of her child, would

redress her injury); <u>see also</u> <u>Franklin v. Mass.</u>, 505 U.S. 788, 825 (1992)

("Redressability requires that the court be able to afford relief through the exercise

15

of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power.") (Scalia, J., concurring) (emphasis omitted). Plaintiff IEPAC has thus failed to satisfy the causation and redressability requirements of Article III and therefore does not have standing to sue the District Attorney for Guilford County.

B.

Plaintiff SPAC has challenged the constitutionality of the 21 day provision. (Am. Compl. ¶ 24.)  In the Complaint, SPAC makes the following allegation regarding the injury it will suffer as a result of the enforcement of the 21 day provision:

> Plaintiff NCRTL-SPAC would like to make contributions to a 2006 judicial campaign during the final 21 days before each respective election. . . .  However, because G.S. § 163-278.13(e2) of Article 22D makes it unlawful for . . . Plaintiff NCRTL-SPAC to make contributions to a judicial candidate during the 21 days before the regular election and would subject that judicial candidate to criminal charges for doing so, . . . NCRTL-SPAC [is] not merely chilled in [its] willingness to do so, but [is] completely prohibited from doing so.  As a result, and due to this statute, . . . NCRTL-SPAC will in fact not so exercise [its] First Amendment rights in this election and in future elections.

(Id.)  Thus, SPAC alleges that it would like to make contributions to the campaign of a judicial candidate during the final 21 days before the general election, but will not do so because of the criminal sanctions facing any individual or entity who violates the Fund's 21 day provision.  See N.C. Gen. Stat. § 163-278.27(a) ("Any individual, candidate, political committee . . . who intentionally violates the

16

applicable provisions of . . . G.S. § 163-278.13 . . . is guilty of a Class 2

misdemeanor. . . .").[8]

Subsections (b) and (c) of § 163-278.27 set forth the procedure in the event

the Board learns of a violation of the 21 day provision:

> (b) Whenever the Board has knowledge of or has reason to believe there has been a violation of [the 21 day provision], it shall report that fact, together with accompanying details to the following prosecuting authorities: (3) In the case of an individual other than a candidate, including, without limitation, violations by members of political committees, referendum committees, or treasurers: report to the district attorney of the prosecutorial district in which the individual resides . . . .
> (c) Upon receipt of such a report from the Board, the appropriate district attorney *shall* prosecute the individual or persons alleged to have violated [the 21 day provision].

Id. § 163-278.27(b) & (c) (emphasis added).  The Board is thus responsible for

---

[8] The 21 day provision, N.C. Gen. Stat. § 163-278.13(e2)(3), is as follows:

> In order to make meaningful the provisions of Article 22D of this Chapter, the following provisions shall apply with respect to candidates for justice of the Supreme Court and judge of the Court of Appeals. . . .
> (3) No candidate shall accept, and no contributor shall make to that candidate, a contribution during the period beginning 21 days before the day of the general election and ending the day after the general election.  This subdivision applies with respect to a candidate opposed in the general election by a certified candidate as defined in Article 22D of this Chapter who has not received the maximum rescue funds available under G.S. § 163-278.67.  The recipient of a contribution that apparently violates this subdivision has three days to return the contribution or file a detailed statement with the State Board of Elections explaining why the contribution does not violate this subdivision. . . .

17

investigating alleged violations of the 21 day provision, and, if it determines that a

violation has occurred, it is to report the violation to the appropriate district

attorney.  <u>Id.</u>  In addition, § 163-278.28 provides for the following:

> (a) The superior courts of this State shall have jurisdiction to issue
> injunctions or grant any other equitable relief appropriate to enforce
> the provisions of this Article upon application by any registered voter
> of the State.
> (b) If the Board makes a report to a district attorney under G.S. 163-
> 278.27 and no prosecution is initiated within 45 days after the report
> is made, any registered voter of the prosecutorial district to whose
> district attorney a report has been made . . . may, by verified affidavit,
> petition the superior court for that district for the appointment of a
> special prosecutor to prosecute the individuals or persons who have or
> who are believed to have violated a section of this Article. . . .

<u>Id.</u> § 163-278.28.  Thus, if the district attorney fails to prosecute after receiving a

report of a violation from the Board, a registered voter may petition the superior

court to appoint a special prosecutor to prosecute the subject of the Board's

report.  <u>Id.</u>

It is significant that any criminal prosecution Plaintiff SPAC might suffer

would be the result of the Board's investigation into their alleged violation of the

21 day provision and the Board's decision to report the alleged violation to the

appropriate district attorney.  <u>See id.</u> § 163-278.27(c) ("*Upon receipt of such a

report from the Board*, the appropriate district attorney shall prosecute the

individual or persons alleged to have violated a section or sections of this Article.")

(emphasis added); <u>id.</u> § 163-278.28(b) ("*If the Board makes a report to a district

attorney under G.S. 163-278.27* and no prosecution is initiated within 45 days

18

after the report is made . . . .") (emphasis added).  Any resulting criminal

prosecution, while carried out by the District Attorney, would be *caused by* the

Board's investigation and referral of the alleged violation.  See id.  Even if the

District Attorney failed to prosecute SPAC for the alleged violation after receiving a

report from the Board, a registered voter could still pursue the Board's report by

petitioning the superior court to appoint a special prosecutor.  See id.  The

decision, then, to prosecute rests solely with the Board and the function of the

District Attorney is entirely ministerial.

Causation and redressability have been described as essentially "two facets

of a single causation requirement."  See Allen, 468 U.S. at 753 n.19 ("To the

extent there is a difference, it is that [causation] examines the causal connection

between the assertedly unlawful conduct and the alleged injury, whereas

[redressability] examines the causal connection between the alleged injury and the

judicial relief requested.").  By statute, the Board is charged with investigating and

reporting a violation of the 21 day provision.  See N.C. Gen. Stat. § 163-278.22(7)

& (8); § 163-278.27(b) & (c).  It then reports the violation to the District Attorney,

see id., and if the District Attorney fails to prosecute the alleged violator, a

registered voter may petition the superior court for the appointment of a special

prosecutor to initiate such a prosecution, see id. § 163-278.28.  Therefore, the

entry of an injunction against the District Attorney for Guilford County, while

preventing him from initiating a criminal prosecution, would not prevent a

19

registered voter from pursuing the Board's report.  See id. § 163-278.28(b).

Plaintiff SPAC has not requested that an injunction be entered against all of the

registered voters in North Carolina or even against the Superior Court of Guilford

County.  See Okpalobi v. Foster, 244 F.3d 405, 427 (5th Cir. 2001) (finding that

because the defendant governor and attorney general had "no authority to prevent

a private plaintiff from invoking the statute in a civil suit," an injunction prohibiting

them from enforcing the challenged statute would be "meaningless" and thus

plaintiffs did not have standing to sue these defendants); Hope Clinic v. Ryan, 249

F.3d 603, 605 (7th Cir. 2001) ("An injunction prohibiting *these defendants* from

enforcing the [challenged statutes] would be pointless; an injunction prohibiting *the*

*world* from filing private suits would be a flagrant violation of both Article III and

the due process clause . . . .") (emphasis in original).  Thus, an injunction against

the District Attorney for Guilford County would not redress any potential injury

Plaintiff SPAC may suffer if it were to violate the 21 day provision as it could still

be prosecuted for the violation.  See Simon, 426 U.S. at 41-42 ("[T]he 'case or

controversy' limitation of Art. III still requires that a federal court act only to

redress injury that can be traced to the challenged action of the defendant . . . .").

Accordingly, Plaintiff SPAC does not have standing to sue the District Attorney for

Guilford County.

C.

Because neither Plaintiff IEPAC nor Plaintiff SPAC has alleged an injury fairly

20

traceable to the conduct of the District Attorney for Guilford County and likely to be redressed by the entry of an injunction prohibiting him from enforcing the Fund's provisions, see Allen, 468 U.S. at 751, he is not properly named as a Defendant in this action.  See Falwell v. City of Lynchburg, Va., 198 F. Supp. 2d 765, 776 (W.D. Va. 2002) ("[M]aintaining this action against the Attorney General would frustrate a fundamental purpose of Article III's case or controversy requirement.  A defendant should not have to endure the considerable expense of litigating a case in which he has no stake.").  Accordingly, the District Attorney for Guilford County will be dismissed as a party to this case.

The District Attorney for Guilford County has been named as a Defendant in this case "as a representative of all district attorneys who may prosecute groups and individuals pursuant to G.S. 163-278.27(b)."  (Am. Compl. ¶ 12.)  However, for the reasons above, see supra Part III.A-B, the Plaintiffs have not alleged an injury fairly traceable to the action of any unnamed district attorney.[9]  Accordingly, they do not have standing to sue the District Attorney for Guilford County as a representative of the class of district attorneys in the State of North Carolina.

IV.

A.

The Defendants have moved to dismiss this case for improper venue

---

[9] As noted earlier, see supra note 5, Plaintiffs Jackson and Duke, as candidates for judicial office, are subject to the jurisdiction of the District Attorney for Wake County, see N.G. Gen. Stat. § 163-278(b)(2).

pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, to transfer venue to the Eastern District of North Carolina pursuant to 28 U.S.C § 1406(a).  When venue is challenged on a motion to dismiss, the plaintiff bears the burden of showing that venue is proper.  See Bartholomew v. Va. Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir. 1979), overruled on other grounds by Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119 (1982).  On a motion to dismiss pursuant to Rule 12(b)(3), the allegations of the pleadings need not be accepted as true and the court may consider facts outside of the pleadings.  Essex Ins. Co. v. MDRB Corp., 2006 WL 1892411, at *2 (D. Md. June 7, 2006) (unpublished opinion) (citing Richards v. Lloyd's of London, 135 F.3d 1289, 1292 (9th Cir. 1998)).  However, "[b]ecause a 12(b)(3) motion has a dramatic effect on [a] plaintiff's forum choices, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party."  Essex Ins. Co., 2006 WL 1892411, at *2 (citing Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1138-39 (9th Cir. 2004)).

B.

Plaintiffs allege that venue in the Middle District of North Carolina is proper under 28 U.S.C. § 1391(b)  because "NCRTL-IEPAC and NCRTI-SPAC are located in Greensboro, North Carolina" and "Defendants Robert Stuart Albright [the District Attorney for Guilford County] and Charles Winfree [a member of the North Carolina State Board of Elections] reside in Greensboro, North Carolina."  (Am. Compl. ¶ 6.)

22

However, 28 U.S.C. § 1391(b) provides that "[a] civil action wherein jurisdiction is not founded solely upon diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . . ."  See also Leroy v. Great W. United Corp., 443 U.S. 173, 183-84 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.  For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases.") (emphasis in original).  Thus, the location of the Plaintiffs is irrelevant to the determination of whether venue is proper in the Middle District of North Carolina.

Moreover, Charles Winfree has been named as a Defendant in this case in his official capacity as a member of the North Carolina Board of Elections.  "Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties."  Republican Party of N.C. v. Martin, 682 F. Supp. 834, 836 (M.D.N.C. 1988) (citation omitted).  The Board of Elections maintains its official offices in Raleigh, North Carolina and meets in Raleigh when making determinations regarding the Fund.  See N.C. Gen. Stat. § 163-20(b) ("The State Board of Elections shall meet in its offices in the City of Raleigh.").  Therefore, Mr. Winfree's official residence, as a member of the Board, is Raleigh, North Carolina, in the Eastern District of North Carolina.

23

In the absence of the District Attorney of Guilford County, see part III <u>supra</u>, none of the Defendants reside in the Middle District of North Carolina and therefore venue is not proper in the Middle District.  <u>See</u> 28 U.S.C. § 1391(b).  When venue is improper under § 1391, a district court may either dismiss or transfer the action pursuant to § 1406.  <u>See</u> 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  The decision to transfer is left to the sound discretion of the trial court and should be determined on a case-by-case basis.  <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 32 (1988).  When venue would be proper in another district under § 1391, transfer is preferred over dismissal unless there is evidence that a case was brought in an improper venue in bad faith or in an effort to harass a defendant.  <u>Gov't of Egypt Procurement Office v. M.V. Robert E. Lee, et al.</u>, 216 F. Supp. 2d 468, 473 (D. Md. 2002) (citing Wright, Miller & Kane, <u>Fed. Practice & Procedure: Jurisdiction 2d</u> § 3827 at 262 (1998 & 2005 Supp.)); <u>see also</u> <u>Proctor v. Morrissey</u>, 1996 WL 555302, at *5 (4th Cir. Oct. 1, 1996) (unpublished opinion) ("[B]y providing an equitable tool for avoiding, where fairly possible, the procedural impediments of improper venue and defects in personal jurisdiction, § 1406(a) reflects a fundamental policy favoring adjudications on the merits over dismissals on those grounds.").  No such evidence has been brought before the Court in this case.  Therefore, because venue would be proper in the

24

Eastern District of North Carolina pursuant to § 1391(b), this case will be transferred to the Eastern District where all of the remaining Defendants maintain their official residences.

V.

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 8] will be GRANTED IN PART. The only portion of the Defendants' Motion to Dismiss decided at this time is the Defendants' challenge to this Court's subject matter jurisdiction. Because the Court has found that Plaintiffs SPAC and IEPAC do not have standing to sue the District Attorney for Guilford County, he will be DISMISSED as a party to this case. As the District Attorney for Guilford County is no longer a party to this case, venue is not proper in the Middle District of North Carolina. Therefore, this case will be transferred to the Eastern District of North Carolina.

This the day of August 7, 2006

    /s/ N. Carlton Tilley, Jr.
United States District Judge

25